COMMONWEALTH of PENNSYLVA-NIA, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and the United States of America, Defendants.

Civ. No. 84–0690.

United States District Court, M.D. Pennsylvania.

Nov. 18, 1985.

Jason W. Manne, Asst. Counsel, Dept. of Public Welfare, Harrisburg, Pa., for plaintiff.

Sally A. Lied, Asst. U.S. Atty., Harrisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Plaintiff brought this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the Department of Health and Human Services and its operating component, the Health Care Financing Administration, to disclose certain records relating to the allowability of costs for vocational training and educational activities under the Medicaid program. The Commonwealth made three FOIA requests for these records between March, 1984, and January, 1985. In all, the defendants have released over 1,000 pages of responsive materials to plaintiff. Currently, defendants are withholding fifteen documents, claiming they are protected from disclosure by 5 U.S.C. § 552(b)(5). Plaintiffs contest the applicability of exemption (5) to the withheld documents, challenge the adequacy of the search conducted by defendants, and claim that even if parts of the documents withheld are exempt from disclosure, the court should order an *in camera* inspection of the documents and order the release of segregable factual portions. The dispute is now before us on the defendants' motion for summary judgment.

### I. *Adequacy of the Search and Sufficiency of the Index.*

In an FOIA case, the summary judgment standard of F.R.Civ.P. 56(c) applies just as much as in any other civil suit. Under that standard, the burden is on the moving party to demonstrate that there is no genuine issue of material fact and "that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). In the context of an FOIA case, application of this standard means that the defending agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Perry v. Block,* 684 F.2d 121, 126 (D.C.Cir.1982), quoting, *National Cable Television Association, Inc. v. Federal Communications Commission,* 479 F.2d 183, 186 (D.C.Cir.1973). In other words, the agency must prove the adequacy of the search undertaken and the applicability of specific exemptions. Such proof may be made by way of affidavits and a *Vaughn* index. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973); *Perry v. Block,* 684 F.2d at 127.

In the instant case, plaintiff preliminarily challenges defendants' entitlement to summary judgment by contesting the adequacy of the search undertaken by the agency, and the sufficiency of the affidavits and index provided to support the claimed exemptions.

■ In determining the adequacy of a search undertaken pursuant to an FOIA

request, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d at 128 (emphasis in original). The government details the search undertaken in the instant case by way of affidavits of Rosario Cirrincione, Chief of the Freedom of Information Branch, Office of Public Affairs, Health Care Financing Administration, Department of Health and Human Services, and of Carl C. Coleman, Acting Director, Freedom of Information, Privacy Division, Office of Public Affairs, Department of Health and Human Services.

Mr. Cirrincione avers that, after analyzing the requests, he directed search of a total of six offices or bureaus within the Health Care Financing Administration, as well as of the ten regional offices of HCFA. Further, Cirrincione avers that in addition to the searches conducted under his supervision, he referred two of the requests to the Office of the Secretary for additional searches conducted by the Freedom of Information, Privacy Division.

Mr. Coleman avers that, with respect to the two requests referred to the Office of the Secretary, his office directed a search of the Office of General Counsel, the Office of Inspector General, the Departmental Grant Appeals Board, and the Office of the Assistant Secretary for Personnel Administration.

The Commonwealth challenges the sufficiency of the Cirrincione and Coleman affidavits to show the adequacy of the government's search on the grounds that neither Mr. Cirrincione nor Mr. Coleman has personal knowledge regarding what kind of search was performed at the regional level, or in the various bureaus and offices of the Health Care Financing Administration and of the Office of the Secretary.

The adequacy of an affidavit explaining the search procedure used is not measured by the personal knowledge of the affiant of each individual file that was searched. Rather,

in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.

*Perry v. Block*, 684 F.2d at 127. Further, adequacy of search is not only demonstrated by the agency's affidavits, but also by the scope and responsiveness of the materials submitted by the agency:

In rendering a challenge to an agency's retrieval procedures, a reviewing court must thus determine whether the materials submitted by the agency satisfactorily demonstrate the apparent adequacy of the search conducted. Where the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate.

*Id.* From the affidavits, it appears that a widespread search was conducted for documents responsive to the Commonwealth's request. Further, the disclosure of over 1,000 pages of responsive documents indicates that the search proceeded in the appropriate agencies and offices. Finally, the Commonwealth has pointed out no blocks of requested information or documents which appear to be missing and which might be discovered by further search of different offices. In short, the affidavits and the documents produced satisfactorily demonstrate to this court the apparent adequacy of the government's search.

■ Plaintiff also challenges the sufficiency of the affidavits and the index provided by the government to meet the government's burden of proving the appropriateness of continuing to withhold fifteen documents. In an FOIA case, the courts require that "when an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."

*Mead Data Central, Inc. v. U.S. Department of Air Force*, 566 F.2d 242, 250–51 (D.C.Cir.1977). In the *Mead Data* case, the court found that the affidavits and index were adequate because the withheld documents were described in sufficient detail to allow plaintiff to argue effectively against the government's exemption claims:

> The source, subject matter, and nature of each document were described separately, and although not individually stated for each document, it is clear from the nature of the documents and the single exemption asserted which justifications apply to which documents.

*Id.* at 252.

In the instant case, there are only fifteen documents being withheld by the government. Each document is described in an index attached as Exhibit A to Rosario Cirrincione's affidavit. The index details the date, author, recipient, subject matter, and length of each document, as well as the circumstances of its preparation and the exemptions pursuant to which the document or portions thereof are being withheld. Additionally, the Cirrincione affidavit and the affidavit of Robert A. Dublin, staff attorney with the Health Care Financing and Human Development Service Division of the Office of General Counsel, both set out in greater detail the circumstances surrounding the preparation of the withheld documents. The Dublin affidavit in particular, together with its supplement, details the litigation before the Grant Appeals Board in preparation for which eleven out of the fifteen withheld documents are claimed to have been generated. Given the detail provided in the Dublin affidavit, the reasonably detailed index, and the clarity with which each exemption is claimed for each document, this court finds that the government has met its burden of providing plaintiff with sufficient information to effectively oppose the government's summary judgment motion.

## II. *Application of Exemptions.*

The Freedom of Information Act, 5 U.S.C. § 552(a)(3), mandates that certain federal government agencies, including the ones involved in the instant action, make available to the public, upon a reasonably detailed request, internal records of that agency. Section 552(b) details certain exemptions to this rule of disclosure. Subsection (b)(5) provides that "(b) This section does not apply to matters that are—... (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." In the instant case, the government is withholding fifteen documents, all pursuant to exemption (b)(5). This exemption has been interpreted to include the three privileges asserted by the government in this case: the attorney-client privilege, the deliberative process privilege, and the work-product privilege.

The attorney-client privilege is asserted for eight of the fifteen withheld documents (documents 2–9 of the index). This privilege is available in the context of an FOIA request where the agency functions as the client and the agency lawyers function as attorneys to the agency. One fundamental prerequisite of the privilege, however, is that there be "confidentiality both at the time of the communication and maintained since. The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 863 (D.C.Cir.1980). In order to prove the continued confidential nature of the documents, the agency must "demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" *Id.*, quoting, *Mead Data Central*, 566 F.2d at 253 n. 24.

█ The most the government has been able to demonstrate by way of affidavits and the *Vaughn* index in this case is that

documents 2–9 were intended to be confidential at the time they were made. There is no assertion, and no proof, that the matter discussed in the documents remain confidential to this day, or that the documents were circulated only to those in the agency authorized to speak or act for the agency on the subject matter of the communications. We therefore find that the agency has not met its burden of proof with respect to the applicability of the attorney-client privilege to any of the withheld documents.

■ The work-product privilege is asserted for eleven of the fifteen withheld documents (numbers 1–11). This privilege under exemption 5, while not coextensive with the privilege of F.R.Civ.P. 26(b)(3), protects those materials that would not be "routinely" or "normally" disclosed under that rule. *Federal Trade Commission v. Grolier, Inc.,* 462 U.S. 19, 26, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983). Rule 26(b)(3) protects from disclosure materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent)." A review of the Dublin affidavits and the index demonstrates clearly that documents 1–11 were all prepared in preparation for the continuing litigation between the state of Oklahoma and the Health Care Financing Administration by either one of the agency's attorneys or one of its employees at the behest of an attorney. Some of these documents discuss settlement proposals, while others propose litigation or settlement strategy. This type of document is clearly not subject to routine disclosure in a civil discovery context, and therefore is protected by exemption 5 to the FOIA.

The final privilege asserted by the government is the deliberative process privilege. This privilege is asserted for fourteen of the fifteen withheld documents (numbers 2–15). It is the only privilege asserted for documents 12–15. Because these are the only documents not also exempted by the work-product privilege, dis-

cussion of the deliberative process privilege will be primarily in the context of these four documents.

The deliberative process privilege protects from disclosure documents that are both "predecisional" and "deliberative". A "predecisional" document is one that is "actually antecedent to the adoption of an agency policy," *Jordan v. U.S. Department of Justice,* 591 F.2d 753, 774 (D.C.Cir. 1978), while a "deliberative" document is one that "reflects the give-and-take of the consultative process." *Coastal States Gas Corp.,* 617 F.2d at 866. The coverage of the exemption thus extends to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

■ Document 12 as described in the index is clearly within this privilege. According to the detailed description, the document contains personal opinions and recommendations of at least two agency officials. The document is annotated with handwritten notes and recommendations and, according to the index, was intended for discussion purposes only. The final version of this document was released to plaintiffs and does not include many of the notations and recommendations found in document 12. Document 12 is thus both predecisional and deliberative.

■ Document 13 has been released in part to plaintiffs, but three sentences continue to be withheld. The three sentences reflect the opinions of the author only and do not state established policy of the agency. Further, they are predecisional because they were made pursuant to a request for comments on how certain HCFA instructions should be viewed. The three sentences withheld from document 13 are thus protected by the deliberative process privilege.

Document 14 has been released to plaintiffs with one sentence deleted. According to the index, this one sentence contains a personal opinion and does not state estab-

lished agency policy. It is therefore protected by the deliberative process privilege.

Finally, document 15 has also been partially released, but portions continue to be withheld pursuant to the deliberative process privilege. The whole document was prepared at the request of the Director of the Office of the Executive Secretariat for comments on an Inspector General's Report. The withheld portions of the document contain recommendations for a course of action in response to the Report, proposed interpretations of regulations, and opinions of the author on the report. The document appears to be both predecisional and deliberative, and is therefore protected by the deliberative process privilege.

Because we find the work-product privilege applicable to documents 1–11, there is no need for us to detail the applicability of the deliberative process privilege to these documents.

### III. *Segregable Factual Material*

The Commonwealth's final argument in this case is that, even though various privileges may apply to the withheld documents, segregable factual information must be released and *in camera* inspection is the most appropriate method of determining the segregable material. We disagree.

First, with regard to the material appropriately withheld pursuant to the work-product privilege, release of segregable factual information is not required. As noted earlier, the work-product privilege of exemption 5 protects from disclosure all material not "normally" or "routinely" disclosed under Rule 26(b)(3). The rule requires that factual information collected or prepared in anticipation of litigation be disclosed "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Under the FOIA, then, such factual material is ex-

empt from disclosure, even if segregable, because it is not "normally" or "routinely" discoverable in a civil context. *See Federal Trade Commission v. Grolier, Inc.*, 462 U.S. 19, 27–28, 103 S.Ct. 2209, 2214–15, 76 L.Ed.2d 387 (1983) ("under the current state of the law relating to the privilege, work-product materials are immune from discovery unless the one seeking discovery can show substantial need in connection with subsequent litigation.... It is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be sufficient to override the privilege but that does not remove the documents from the category of the *normally* privileged.")

Although segregable factual material is protected by the work-product privilege of exemption 5, it is not protected by the deliberative process privilege. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). In this case, the government has already released significant portions of three out of the four documents for which it claimed solely the deliberative process privilege. The Commonwealth, however, claims that the government is refusing to disclose segregable factual material, and urges that "[u]ltimately the Court must have the documents before it to make an informed decision on the issue of segregability." Plaintiff's Brief in Opposition to Motion for Summary Judgment Filed by Defendants, at 5.

We do not find that this case is an appropriate one for *in camera* review. *In camera* inspections of documents in the FOIA context are not favored because they are conducted without the benefit of the adversary process and because they are not a "wise use of increasingly burdened judicial resources." *Mead Data Central, Inc.*, 566 F.2d at 262. Where the government has provided a detailed index and justification for withholding each of the documents, "a district court need not conduct its own *in camera* search for segregable nonexempt information unless the agency re-

sponse is vague, its claim too sweeping, or there is a reason to suspect bad faith." *Id.*

We find nothing vague about the descriptions of the withheld portions of documents 12–15. Further, the Commonwealth has suggested no bad faith, nor do we find any reason to suspect bad faith, especially given the extensive disclosure of segregable factual material already made from documents 13–15. We therefore will order no further disclosure, nor will we order an *in camera* review of the documents.

Because we find that summary judgment is appropriate in this case at this time, we see no reason to address defendant's motion for a protective order. No further discovery need take place.